**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ESTHER MARCIAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| EQUIFAX INFORMATION SERVICES, ) | **COMPLAINT WITH JURY** |
| LLC ) | **TRIAL DEMAND** |
| ) | |
| Defendant. ) | |

**PRELIMINARY STATEMENT**

1.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act 15 U.S.C. § 1681, *et seq.* (the "FCRA") to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy,

2.    Under the FCRA, consumer reporting agencies are charged with two primary duties: the duty to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports; and the duty to reasonably reinvestigate consumers' disputes of inaccurate information.

1

3.    Defendants compiled, maintained, and reported information concerning Plaintiff's creditworthiness, credit-standing, credit capacity, character, and general reputation. Then, that information was made available for use by third parties in credit transactions involving Plaintiff, for employment purposes, the underwriting of insurance for Plaintiff, and even in connection with a determination of Plaintiff's eligibility for a license or other governmental benefit. Accordingly, and pursuant to various provisions of the FCRA, Plaintiff has a legally protected interest in Defendants fulfilling their respective duties under the FCRA, so that the information reported and maintained by Defendants is done so in a manner which is fair and equitable to Plaintiff, with regards to the confidentiality, accuracy, and relevancy of that information.

4.    This action for damages is based on Defendants' false reporting on Plaintiff's credit file and/or consumer reports, and failures to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

### PARTIES

5.    Plaintiff, Esther Marcial, is a natural person who resides in the Houston, Texas and is a "consumer" as that term is defined at 15 U.S.C. § 1681a(c).

6.    Defendant, Equifax Information Services, LLC ("Equifax"), regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties for monetary compensation and uses interstate commerce to prepare and/or furnish the reports. Accordingly, Equifax

2

is a "consumer reporting agency" as that term is defined by FCRA at 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

7.    This Court has federal question jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, U.S.C. § 1692k and 28 U.S.C. § 1331.

8.    Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Georgia because Defendant is headquartered within this district.

## ALLEGATIONS OF FACT

9.    Plaintiff was in the market for credit and requested her credit file from Equifax and upon receipt of that file, she discovered several inaccuracies contained therein.

### *Allegations in Support of Plaintiff's Section 1681e(b) Claim*

10.    Specifically, Equifax reported that Plaintiff had two credit accounts—e.g. revolving accounts, mortgage accounts, and any other installment loans or open lines of credit—with Portfolio Recovery Associates, LLC that she never applied for, much less did she obtain credit.

11.    By reporting Plaintiff had credit accounts with these companies, Equifax represented that Plaintiff obtained a loan or credit from these companies.

12.    Equifax's reporting was inaccurate because Plaintiff did not have credit accounts with the company.

13. The company is a debt collector that do not lend money to debtors and never provide credit accounts, such as revolving accounts, mortgage accounts, installment loans or lines of credit to any consumers.

14. Due to an error in the reporting mechanism, the debt collector *always* report debts in a manner that misrepresents the character and/or type of debt and result in debts appearing as credit accounts instead of collections.

15. Equifax knows the debt collectors are furnishing inaccurate information when they represent that the accounts they are collecting on are credit accounts.

16. Despite being aware of the inaccuracies from these companies, Equifax has failed to adopt and/or implement procedures to prevent the errors from appearing in consumer reports.

17. The debt collectors have not fixed the problem on their end because of the cost to change their reporting procedures.

18. Further, the debt collectors benefit from having the debts appear as credit accounts. Specifically, a large percentage of the debts reported by the debt collectors are debts that they do not own or are not owed by the debtors.

19. Many debtors are confused by the manner in which the debts are reported, and their confusion often leads to them paying debts that they do not owe.

20.    Both Equifax and the debt collectors believe they can get away with their illegal conduct because the general profile of the affected debtors are marginalized people without the resources to challenge them.

### *Allegations in Support of Plaintiff's Section 1681g Claim*

21.    The FCRA requires that Equifax clearly and accurately disclose all information in a consumer's file upon request from such consumer.

22.    Although the debt collectors are misclassifying the collection accounts as credit accounts when they report their accounts to Equifax, the debt collectors are reporting that they are debt buyers and identify an original creditor.

23.    Despite receiving information on a purported original creditor, Equifax did not disclose the information on the original creditor to the Plaintiff.

24.    According to the Consumer Data Industry Association ("CDIA"), the industry leading organization for furnishers and consumer reporting agencies, the "original creditor is required for collection agencies" and "must be present each time the account is reported."

25.    Further, the CDIA states the "purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports."

26.    Continuing, the CDIA notes that "[w]ithout the original creditor names, consumers may not know what the accounts represent."

27. Thus, Equifax knows that it is required to report the original creditor's name and that it's failure to do so is causing the consumer to not recognize the account.

28. Notably, the two other national credit reporting agencies, Trans Union and Experian, have abided by the CDIA's edicts and implemented procedures that assure the original creditor name is included in all collection accounts that appear in their reports.

29. If Equifax had made the same investment in its procedures that were made by both Experian and Trans Union, then Equifax's credit reports would not be littered with collection accounts that do not contain the original creditor's name.

30. Nonetheless, Equifax continues to knowingly omit the original creditor's name because Equifax does not want to incur the costs of implementing a procedure to correct the debt collector's misclassification of the account.

31. While Equifax does not want to incur the cost of correcting the problem, Equifax continues to accept information from these unreliable debt collectors because the debt collectors are a significant source of income for Equifax.

32. Equifax has conducted a cost-benefit analysis on whether to incur the costs to fix the error or to apportion a small percentage of those would-be costs to litigating claims brought by aggrieved consumers that fell victims to its conduct.

33. In choosing to litigate rather than correct, Equifax was motivated to adopt and act on an interpretation of section 1681g that gave it grounds to litigate

6

a defense against the claims that consumers were bound to bring against Equifax for its intentional violations of the FCRA.

34.    Because the language in section 1681g and the obligations of a credit reporting agency that arise from the said language are unambiguous, to give a cover to an otherwise indefensible defense, Equifax had to purposely adopt a reading of § 1681g that contravened the clear objective and instruction of the statute.

35.    To achieve its purpose of adopting an interpretation of § 1681g that gave it cover and/or plausible denial, Equifax reads in an accuracy obligation in § 1681g where there is absolutely no language to support such reading.

36.    More specifically, while the statue clearly reads "All information in the consumer's file at the time of the request" must be "clearly and accurately disclose[d] to the consumer," § 1681g(a)(1)(A), Equifax claims that § 1681g only covers inaccurate information.

37.    The Supreme Court has instructed persons interpreting the FCRA to assure that the adopted interpretation has a foundation based in the language of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

38.    There is no language in § 1681g to support Equifax's interpretation that § 1681g governs only information that is inaccurate.

39.    Further, the Supreme Court has instructed anyone governed by the FCRA to heed the warnings and/or holdings of the circuit courts of appeals when it comes to interpreting duties under the FCRA. And the Second Circuit stated,

7

albeit in an unpublished opinion, that "§ 1681g requires consumer reporting agencies to 'clearly and accurately disclose … [a]*ll* information,' not *all accurate information*." *Selvam v. Experian Information Solutions, Inc.*, 651 Fed. Appx. 29, 33 (2d Cir. 2016) (citing 15 U.S.C. § 1681g(a) (emphasis in original).

40. The *Selvam* opinion was rendered in 2016, so Equifax has been on notice, from the Second Circuit, that its interpretation of section 1681g(a) was inaccurate for nearly 10 years.

41. Additionally, during that same time, in 2015, Equifax was sued by the Ohio Attorney General and 30 other state attorney generals for, among other things, failing to report the original creditor. More particularly, as a result of the state attorneys' litigation, Equifax agreed to "revise training materials and adopt policies and procedures to notify and instruct Collection Furnishers that the name of the Original Creditor … [is a] mandatory reporting requirement[], and [Equifax] shall reject data that is not provided with the name of the Original Creditor."[1]

42. Moreover, Equifax has *direct* knowledge that its decision to omit the identity of original creditors when reporting a collection account is causing serious harm to consumers. In a recent lawsuit in the Middle District of Florida, Equifax admitted that its failure to report the name of the original creditor in collection accounts have led to "numerous other lawsuits filed against Equifax." *Clarke v. Equifax Information Services, LLC*, No. 8:25-cv-01499-JSM-AAS, ECF No. 20,

---

[1] https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx

fn. 1 (M.D. Fla. Oct. 1, 2025) (citing *Aguirre v. Equifax Information Services LLC*, 0:25-cv-61099-AHS, ECF No. 1, (S.D. Fla. June 3, 2025); *Williams El v. Equifax Information Services LLC*, 8:25-cv-01930-JRR, ECF No. 1, (D. Md. June 16, 2025); *Madaris v. Equifax Information Services LLC et al.*, Case No. 1:25-cv-00503-JPH-SKB, ECF No. 1, (S.D. Ohio June 17, 2025).

43.  And based on a review of cases filed against Equifax in Pacer, consumers have been filing lawsuits against Equifax for failing to report the original creditor for years.

44.  Considering Equifax has not corrected this error after being sued by consumers for many years, the costs of litigating these lawsuits for Equifax have not been sufficient enough to deter it from continuing to violate the FCRA.

45.  Therefore, a substantial punitive damages award is in tow to be levied against Equifax so that Equifax is actually deterred from violating the FCRA in the future.

## COUNT I
## VIOLATIONS OF THE FCRA 15 U.S.C. § 1681e(b)

46.  Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

47.  Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and

maintained concerning Plaintiff when they reported the inaccurate account information from certain debt collectors.

48.    As a result of Equifax's violations of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages, including but not limited to: harm to her credit score and credit opportunities, depression and anxiety, loss of appetite, stomach pain, nausea, headaches, shortness of breath, high blood pressure, irritability, sleep loss, feelings of fear, feelings of shame, embarrassment and humiliation, difficulty concentrating, harm to reputation, and loss of privacy.

49.    The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

50.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant Equifax in amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT II**
**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681g**

51.    Plaintiff realleges and incorporates all factual allegations in the Complaint as if fully set out herein.

52.    Pursuant to 15 U.S.C. § 1681g(a)(1), CRAs are mandated to provide a consumer with all information in the consumer's file upon request from the consumer.

53.    Equifax violated § 1681g(a)(1), by failing to provide the Plaintiff with all information in her file after she requested it.

54.    Equifax violated § 1681g(a)(1) by failing to provide Plaintiff with the original creditor name for certain collection accounts.

55.    As a result of Equifax's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: deprived of important information, hampered ability to correct errors in her report, cost and time to search for the withheld information, frustration and anxiety, feelings of fear, feelings of worry, embarrassment and humiliation, and other emotional and mental distress.

56.    The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

57.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

58.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

11

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for her fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

Dated:  March 30, 2026

*By: /s/* Tracy Udunka
Tracy Udunka.Esq
**THE TD INJURY FIRM, LLC**
Tracy@tdinjuryfirm.com
Georgia Bar No. 687722
1700 Pennsylvania Avenue # 101
McDonough, GA 30253
Phone: 404-595-1991
Fax: 404-551-3969
***Counsel for Plaintiff***

Exhibit A

Date: March 09, 2026
Confirmation # 6068583999



**PORTFOLIO RECOVERY ASSOC - Closed**

Riverside Commerce Center, Norfolk, VA  23502-4962 | (800) 772-1413     Date Reported: **02/12/2026** | Balance: **$4,746**
Account Number: **\*8142** | Owner: **Individual Account**     Credit Limit: ▪ | High Credit: **$4,746**
Loan/Account Type: **Debt Buyer Account** | Status: ▪

Date Opened: **03/27/2025**     Date of 1st Delinquency: **05/14/2023**     Terms Frequency: ▪
Date of Last Activity: ▪     Date Major Delinquency 1st Reported: **06/30/2025**  Months Reviewed: **8**
Scheduled Payment Amount: ▪     Amount Past Due: **$4,746**     Deferred Payment Start Date: ▪
Actual Payment Amount: ▪     Charge Off Amount: ▪     Balloon Payment Amount: ▪
Date of Last Payment: ▪     Date Closed: ▪     Balloon Payment Date: ▪
Term Duration: ▪     Activity Designator: ▪     Narrative Code(s): **057**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2026 | C | ▪ | ▪ | ▪ | ▪ | | | | | | | |
| 2025 | ▪ | ▪ | ▪ | ▪ | ▪ | C | C | C | C | C | C | C |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | Paid on Time | 30 | 30 Days Past Due | 60 | 60 Days Past Due | 90 | 90 Days Past Due | 120 | 120 Days Past Due |
| 150 | 150 Days Past Due | 180 | 180 Days Past Due | V | Voluntary Surrender | F | Foreclosure | C | Collection Account |
| CO | Charge Off | B | Included in Bankruptcy | R | Repossession | TN | Too New to Rate | ▪ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---------|--------------------------|----------------------|-------------------|-----------------|-------------|--------------|-----------------|
| 01/26 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |
| 12/25 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |
| 11/25 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |
| 10/25 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |
| 09/25 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |
| 08/25 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |
| 07/25 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |
| 06/25 | $4,746 | ▪ | ▪ | ▪ | $4,746 | $4,746 | ▪ | 057 |

| Narrative Code | Narrative Code Description |
|----------------|---------------------------|
| **057** | Collection Account |

13

Date: March 09, 2026
Confirmation # 6068583999



**PORTFOLIO RECOVERY ASSOC - Closed**

Riverside Commerce Center, Norfolk, VA  23502-4962 | (800) 772-1413     Date Reported: **02/24/2026** | Balance: **$8,286**
Account Number: **\*4180** | Owner: **Individual Account**     Credit Limit: ▪ | High Credit: **$8,286**
Loan/Account Type: **Debt Buyer Account** | Status: ▪

Date Opened: **04/29/2025**     Date of 1st Delinquency: **05/20/2023**     Terms Frequency: ▪
Date of Last Activity: ▪     Date Major Delinquency 1st Reported: **08/01/2025**  Months Reviewed: **6**
Scheduled Payment Amount: ▪     Amount Past Due: **$8,286**     Deferred Payment Start Date: ▪
Actual Payment Amount: ▪     Charge Off Amount: ▪     Balloon Payment Amount: ▪
Date of Last Payment: ▪     Date Closed: ▪     Balloon Payment Date: ▪
Term Duration: ▪     Activity Designator: ▪     Narrative Code(s): **057**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 2026 | C | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ |
| 2025 | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | ▪ | C | C | C | C | C |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ✓ | Paid on Time | **30** | 30 Days Past Due | **60** | 60 Days Past Due | **90** | 90 Days Past Due | **120** | 120 Days Past Due |
| **150** | 150 Days Past Due | **180** | 180 Days Past Due | **V** | Voluntary Surrender | **F** | Foreclosure | **C** | Collection Account |
| **CO** | Charge Off | **B** | Included in Bankruptcy | **R** | Repossession | **TN** | Too New to Rate | ▪ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 01/26 | $8,286 | ▪ | ▪ | ▪ | $8,286 | $8,286 | ▪ | 057 |
| 12/25 | $8,286 | ▪ | ▪ | ▪ | $8,286 | $8,286 | ▪ | 057 |
| 11/25 | $8,286 | ▪ | ▪ | ▪ | $8,286 | $8,286 | ▪ | 057 |
| 10/25 | $8,286 | ▪ | ▪ | ▪ | $8,286 | $8,286 | ▪ | 057 |
| 09/25 | $8,286 | ▪ | ▪ | ▪ | $8,286 | $8,286 | ▪ | 057 |
| 08/25 | $8,286 | ▪ | ▪ | ▪ | $8,286 | $8,286 | ▪ | 057 |

| **Narrative Code** | **Narrative Code Description** |
|---|---|
| **057** | Collection Account |

14